The next case for argument is 21-2608 Northern Iowa International Association of Sheet Metal, Air, Rail & Transportation Workers et al v. Iowa Northern Railway Company. Ms. Diehl-Gibbons? Yes, your honor. Good morning and may it please the court. My name is Erica Diehl-Gibbons and I represent Appellant Smart Transportation Division. This case concerns a major dispute arising under the Railway Labor Act. The critical issue here is whether the parties are in a period where they must maintain the status quo or whether they are in a period where self-help is permissible. As demonstrated in Smart's briefing and as I will discuss here today, the parties are currently engaged in mediation with the National Board, which I'll also refer to as the NMB, and squarely within the Section 6 process where the status quo must be maintained by the parties and are therefore not permitted to exercise self-help. In finding otherwise, the district court committed reversible error. The Railway Labor Act is unique in that it was jointly drafted by the railroads and unions back in the 1920s to create a more stable labor relations following decades of widespread and often violent work stoppages and it was enacted in 1926. The enumerated purposes are set forth in the very outset of the act and they are to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions and to avoid the interruption of interstate commerce. Agreements under the act don't expire but they continue on until they're in effect. Section 6 of the act is where you find the detailed procedures to be followed when the parties wish to change their agreements and it commences with the service of the Section 6 notice. Counsel, let me ask you this. If the only Section 6 notice that had been given was Iowa Northerns, do you agree that the union did not take timely action that would not trigger, so that the time bar wasn't triggered, the self-help bar was not triggered? No, your honor, I do not agree. We have the fight over the 10 days and it's the June 15 and 17 and so forth or what? If there was no, there was never a union Section 6 notice. Regardless of whether bargaining commenced in April of 2020 or if it commenced with the railroads notice in June, the result is the same and that's because of the language of Section 6 and if I may just indulge the court, it says specifically in every case where a notice of a change has been given or conferences are being held with reference thereto or the services of the mediation board have been requested by either party, rates of pay, rules of working conditions shall not be altered by the carrier until the controversy has been finally acted upon as required by Section 155 of this title by the mediation board unless 10 days has been elapsed. Isn't your answer contrary to the assumption that Judge Loken was making in his question? I think he was saying, assuming there had not been an initial Section 6 notice from the union and the prior discussions, whatever they may be, if what had happened here is just the if that's what happened and we know that there's an argument that that's not what happened, but I think his question was if that's what happened, wouldn't they be entitled to engage in self-help? Based on my understanding of the question, no they would not be because once notice has been given, even if notice started in June by the railroads notice, there's no built-in penalty on the plain language or frankly in any case law for failing to respond within 30 days or within 10 days. Wait a minute, I thought there was a there's a 10-day rule that you have to you have to respond or go to the NMB within 10 days or their self-help bar is lifted. Maybe that's in 152. No, that's in Section 6 and the rule is that after there has been a termination of conferences, the 10-day clock starts from that point forward. All right, what case says that? If you don't respond to the notice at all, you never start negotiating and you don't take it to the NMB. What case says that the 10-day lifting of the of the self-help bar doesn't apply? I'm unaware of any case that stands for that proposition. The only cases are on point. I think you're wrong. I thought I thought you were going to get into whether that they meant that somehow that meant the 10 days. I thought it was I thought this bar there are multiple there are multiple exceptions to the self-help bar and this is one of them, right? The 10 days deals with the termination of conferences. There is no 10 days. If there's no conference because the party given the notice says, you know, go to Blazes and doesn't take that doesn't take a major dispute to the NMB, then there's no self-help bar, right? So that's that is pretty much precisely what happened in Great Lakes case in that was in our briefing before the District of Colorado where there were two different agreements at issue and at one point they the parties went years with after serving their section 6 notice without. I'm sorry, your honor. Counsel, as I see it, one of the key issues here is that we are looking for an objective manifestation of the termination of conferences and why isn't the May 4th section 6 notice by Iowa Northern an objective manifestation that conferences had terminated? Well, all the May the May 4th was in their own words the initiation of the section of their section 6 process. But wouldn't that indicate that the conferences had concluded on the the first notice? No, your honor. And that's not a typical in in railroad negotiations where parties are serving counter proposals or cross section 6 notice. That doesn't mean that that one side it's just these are what we want to see in our agreement. That doesn't mean that that we're no, it's not it's not typical, but I'm not aware of any case precluding a second section 6 notice. And it's it's not the parties are not precluded from serving cross section 6 notices. So why would they file a new notice if they were still negotiating under the first one? Again, that is that's common in the rail industry for parties to serve their own section 6 notices. It's just a list of counter proposals what they want to see in the eventual agreement. And if I could go back to judge. Loken's question that the 10 days deals with the termination of conferences. There is no, and it's set forth fully in our briefing as well. There is no penalty in the act for failing to respond to one party or another section 6 notice or bargaining notice. And I'm sorry, your honor, I can't. I was muted. The self-help bar is not a penalty. It's it's a it's a prohibition on interfering with bargaining, which in this in this in my example, just like when a party declares conferences worthless and walks away in either case. The self-help bar should lift. Except that's not how the act was designed. It's not in accordance with its plain language, with its legislative history. I've been dealing with this statute probably as long as well before you were a lawyer. And you can't you can't talk. You can't tell me how this statute was designed because it's it's inscrutable in many respects. It's very difficult to deal with. I so what case law that says case law that says that the self-help bar continues in my in my hypothetical. Well, the status quo, which is the bar to self-help continues. It continues until the has not yet happened. In fact, the parties are still engaged in mediation. And the railroad admits that it's still engaged in mediation. You know, briefly turning to the facts here, and I would like to save some time for rebuttal, but SMART served its section six notice on April 1st of 2020, which opened negotiations due to the pandemic and railroads unwillingness to meet remotely. The parties eventually held in-person conferences in January and March of 2021. By letter, as you noted, by letter dated March 4th and received on May 10th, the railroad served its counter proposals, which included changing wages, the very same very article that was in negotiation before it with a sole discretion over rates of pay, changes in working conditions. Then no changes took place on that date. They very earliest we would submit was when the termination of conferences allegedly could have occurred. And in response, SMART timely invoked the mediation board services on June 17th. And again, the railroad admits that the parties are engaged in mediation and that it is not challenging the NMB's jurisdiction. And if I if there are no further questions, if I could save my remaining time for rebuttal. Very good. Ms. Peterson? Yes. Good morning, your honors. May it please the court. My name is Chloe Peterson. I am representing Iowa Northern here. If I may, I'd like to start with a response on behalf of the carrier as to whether or not there were any implications of SMART failing to respond to Iowa Northern's section six notice. And a plain language reading of the RLA says there is. We're going to look at both section six as well as section two. There are three sort of prescribed off ramps, if you will, that allow the parties to engage in self-help if and when the mediation services of the board are not timely invoked. And the obligation to timely respond is both within the paragraph, the last paragraph of section six, following the comma, unless within 10 days of the termination of conference, the same 10 day obligation to respond is also outlined in section two. Section two also speaks to the party's obligation to maintain in good faith negotiations here. So to the extent the organization is claiming that there was no obligation. Which subpart of section two? Yes, your honor. Is it nine? Give me just a second. It's going to be section two ninth, I believe. Yep. It says within 10 days after receipt of a notice of a desire on the part of either party to confer in respect to such dispute, the parties are obligated, in fact, to confer in conference. So again, that's that section two. Couple that again with the plain language of section six outlining in every case that a timely response is required. There can be no question here that the organization should, in fact, have responded. Let me ask you, has an appellate court, to your knowledge, addressed this interplay between section two ninth and section six? To the extent there's been any addressing, the best case on this point, I think, would be the case of Brotherhood of Railroad Trayman versus Jacksonville. And that's cited by the carriers in the carrier's response. It outlines the obligations of the parties to. That's the old Supreme Court case, right? That's correct, your honor. It doesn't talk about this question specifically. Not this question specifically, but it outlines the party's obligations to engage in good faith bargaining and negotiations, both within section six and those obligations as outlined in section two. So turning now to the other items up at issue here is whether or not the additional database factors should have been addressed by the organization in their failure to do so, resulting in the denial of their motion by the district court. As this court is well aware, there are, in fact, four database factors. The sole argument that the organization made before the district court was in reliance on their understanding that they would be essentially given free rein because they were claiming a violation had, in fact, occurred. When taken the issue up by the district court, what the organization fails to appreciate here and what their argument is missing is that there are significant questions of fact of which the district court was unable to resolve on the critical point of whether or not the required procedures under the RLA had, in fact, been violated. Due to the significant dispute on these critical facts, the district court was unable to apply any standard to conclude whether or not the procedures had completed permitting self-help or whether or not they were ongoing requiring the need to maintain the status quo. Without this violation of the RLA, whether it be by fair chance of prevailing or not, because the appellant was unable to convince the district court at any level as to the status of the negotiations or completion of the required procedures in its favor with regards to its section six notice or the carrier section six notice, the factors of probability of success, irreparable harm to the movement, as well as the other two database factors all remained on the agenda. So you're just saying that they failed to meet their burden to obtain the requested injunction? Exactly, Your Honor. Not only did they fail to meet their burden for the district court, they didn't even argue the database factors. They simply relied on the fact that they were alleging a violation of the status quo, despite being unable to prove to the district court that a problem here with the district court using a likely to succeed standard as opposed to a fair chance standard. Your Honor, my reading of the district court's opinion here was that it was in reference to the actual database factor and not the standard that the court ultimately would apply. In reading the court's opinion, the opinion repeatedly states that there are significant disputes of critical effect that didn't allow it to make an assessment on the likelihood or the fair chance, really gauge any standard. The court simply couldn't apply it because the facts were in dispute. The court couldn't address. So no, I don't believe that the court actually applied the more stringent standard. And I do agree that it's the fair chance of prevailing that would have been the appropriate standard had the district. You concede that? Brown's is far more complex than that. Brown's says the fair standard applies when the government agency action is challenged. And it says that it's keyed to the balancing of burdens and the initial showing. And here the railroad says there aren't any burdens to balance because the duty is absolute. I submit there is a very strong argument that rounds that the fair, the traditional under rounds, the traditional test applies. Your Honor, that's a fair reading. My understanding of the case law here is that the more stringent standard would apply if in fact this was a state action. And I do understand there's a question here, but the issue being, of course, the district court didn't reach, did not apply either standard. So it's really not an issue for us to spend much time on, because what the district court said is that it can't get there. We can apply a standard because of these significant questions of critical fact. Now, it appears as though in reply, the organization has stepped away from the prior argument that no response was necessary to the carrier's response. My reading of that would be at page eight. However, if that reading's inaccurate, again, I'm going to point the court to the plain language of the RLA, both section six, in every case, a timely response and conference is required. And this is also supported by the plain language of section two, which states that the parties are to conference within 10 days after receipt of a notice of a desire to address a dispute. Ms. Patterson, what's wrong with this take that I'll present to you? The district court found there were fact questions about whether conferences were terminated under the union's initial notice. And therefore, given that the Railway Labor Act generally does not favor self-help and strongly favors continued and almost endless negotiations and the Railroad's notice covers many of the same issues as the initial notice, why doesn't those combination of things suggest that self-help was inappropriate in this case? Sure. So first, Your Honor, I want to address the issue of the section six notices. And to the extent this is just a hypothetical, that's fair. But in this actual case, the section six notice that the carrier issued was in fact markedly different than the section six notice that the organization issued. Well, certainly you'll concede it was overlap. I will concede, Your Honor, that the entire notice from the organization dealt with wages. The notice that came from the carrier dealt with not only one item with regards to wages, but it also dealt with work conditions. And because of that, whether you look at them individually or collectively, the issues that were in the section six notice of the carrier had to issue. Otherwise, they would not have been right for bargaining under the Conrail and other cases in that line of precedent. But for the carrier issuing their secondary section six notice, they would not have been able to negotiate and bargain on all of those other issues. Now, getting back to the questions of fact as to whether or not the conferences had in fact terminated, I think that it was within the court's discretion to find that those facts were not clear enough for it to make a determination there. But given the organization's failure to respond, its failure to adhere to its obligations as outlined in section two, the unequivocal statement when they were literally asked if they would in fact return to the bargaining table in responding with a no could not have been clearer. Couple that with the subsequent email that the carrier again following up, they did not lie in wait here. The carrier followed up. Still, the organization chose to sandbag and refused to respond. Given the organization's actions and not adhering to its obligations under the RLA, specifically those outlined in section two, to bargain and negotiate in good faith, that left an opening for the carrier to then either come to the court, engage in self-help if the appropriate timelines had expired, or as it did in this case, move on and issue its own notice. Essentially, the organization abandoned its section six notice by failing to engage in its required process as outlined under section two. But if that's so, didn't the district court, wouldn't you be in a much stronger position had the district court found that there's no question of fact that they in fact did terminate the proceedings under their notice? And what we have here is the exact opposite. Yes, your honor. And again, this is a preliminary finding. The procedural result of this is that the parties will continue to progress the case before the district court. And yes, it is true as the organization has stated, the parties are also continuing to negotiate before the national mediation board. But I do need to make one clear before my time expires. There was a lapse in the response time that would have allowed and precluded the carrier from engaging in the self-help that it in fact took. The organization was served with an unequivocal statement of the carrier's intention in understanding that it was well within its rights to move forward with self-help. They organization does not dispute receiving that notice, nor does it dispute that it turned around and attempted to respond the very next day. It sent its response to the carrier and it wasn't until June 17th, two days after the 10 days outlined in section six of the RLA and the 10 days outlined in section two of the RLA. Because of that lapse, that's what permitted the organization or excuse me, that's what permitted the carrier to move forward with engaging in self-help. While it issued a notification again, almost incredibly to the organization the day before the timeline was going to run, like putting them on further notice that look, we are moving forward. The organization still sat on its hands and missed its deadline to timely file. Incredibly, your honors, before I finish my time here, we're in an unprecedented time where the supply chains are significantly delayed. We have labor shortages and a global pandemic. Despite all of this, we're before you today with the request that we be enjoined from providing increased wages to keep employees servicing our trains in a safe and efficient way. There could be no justification in this instance, given the circumstances here that would warrant a finding on the public interest front that the carrier's interest here do not outweigh the organization's The organization has failed to present any argument with regards to its harm and any balancing that would have been required was not argued before the district court. And those arguments that are being made now should be deemed waive the public. They argue it's irrelevant. Balancing is not allowed under self-help law. They did not make that argument at the district court. They failed to address it at all. So for that reason, we believe that those arguments that are being made now should be deemed waived. If there are no further questions, I will conclude by stating that there's no clear error of law or fact here that would warrant the overturning of district court's findings with regards to this matter. And I thank you, your honors, for your time. Thank you. There's time for rebuttal. I'd like to start with addressing the 10 day limit. Ms. Thiele, I want to start with something I forgot that I meant to ask you in your initial argument. Okay. On footnote 14 on page 35 of your brief, you, with a citation to an NLRB decision, you say it is perfectly permissible for a restoration of the status quo to not wipe out the unilaterally imposed wage increases while the parties engage in further bargaining. And my but you wanted the wage increases held in place. I thought not. I thought you clearly argued that the employees should continue to be underpaid while you bargain away. We didn't really reach that issue in the district court, your honor. You mean you didn't, you submitted a proposed order and it didn't answer the question. Correct. Yeah. Okay. Your proposed order was the status quo, right? Correct. And therefore this good guy footnote provision is irrelevant to the position you're arguing, your client is arguing in this case, right? Well, respectfully, your honor, you can still kick it back to the district court who can have further proceedings in accordance with the findings of the appellate court. No, I want, so you're going to change position today? No, your honor, our intention isn't to change our position. Your position is you want the status quo, you want the wage increases taken away while you bargain for however long. If that's how the court sees it, it would be appropriate. No, no, that's your position. My position is that the status quo can be maintained without taking away the wages. That wasn't your position. That's not your position. Your position is the status quo. The status quo is you don't get the money until we successfully bargain. Yes, then that is fine. I mean, ultimately that's the act required. I can see why you argue public interest is irrelevant. Go ahead with your vote. I'd like to first address the 10-day limit set to the act. There's two places where it speaks to 10 days. Section 2-9 deals exclusively with elections. And then up at section 2-6, it provides for conferencing within 10 days. However, that is only, and let me just read from the language here, within 10 days after the receipt of the notice on either party to confer with respect to the dispute, that only speaks though for minor disputes, those issues arising out of grievances or the interpretation or application of the existing agreements. That doesn't speak to major disputes, which is what we are in currently. That only speaks to minor disputes. Next, if the district court's decision were to stand, it would have disastrous effects on interstate commerce and an already over-extrained supply If the railroad is entitled to self-help, so too can the union. And since secondary picketing is lawful under the Railway Labor Act, such could extend far beyond the 150 or so miles of the Iowa Northern Railroad. And I don't raise that to be an alarmist, but just to point out the consequences of the lower court's errors. I don't understand you. I don't understand the, your position. With regard to that? Well, of course, self-help by the union is striking. Correct. And here, well, the no strike clause is gone anyway. I mean, but I just, you're saying that if employers are, if employers section six notices in appropriate circumstances are taken as freestanding, if you will, even, even if there's a disputed dispute as to the status of a prior union section six notice. If we recognize that the world is coming to an end, I don't, I don't prevent it. Self-help. I don't know if it was stubborn or just negligent. But there's no, the, the act doesn't permit a party to engage in self-help after just 10 days after sorting a section six notice. That's nowhere in the act. That's not your legal position. You don't have any case authority to support that to my knowledge. That says that they can. I mean, it's, it's meant to be, it's Detroit and Toledo shoreline. We only like Erie. I mean, time and court has noted that the process is long. It's interminable. It's, it's meant to wear down the party so that cooler heads. That's an ongoing process. We're talking about in a new, in a section six notice in which the other side says go to blazes. And that's when, when, when, when, is this, does this, is the self-help bar lifted? It lifted on under a couple of scenarios. One is either party can go enlist the NMB services. Once there's been an unequivocal termination of conferences, if you don't go to the NMB within 10 days, then you're permitted. This is a case where conferences haven't started because one, one side refuses to bargain. Don't even respond to the notice, but conferences had started. They started in January and they started in my hypothetical is, and that, and my hypothetical is trying to address your argument that this is the end of the world. My point with regard to the, the work stoppages is that because Norris LaGuardia divest the courts of jurisdiction to enjoy secondary picketing. If, if a rule like this were to stand where either party can engage in self-help, if they don't, if they don't respond to a section six notice within 10 days, which again is not in the act itself, but if either party can do that, if they, if they fail to respond, then it could have disastrous effects on interstate commerce. You would have striking potentially all of the time. And that's completely the opposite of what the act was designed to do. It was intended to stop that to stop self-help by both parties. Not if the railroad responded within 10 days to the union's notice. But there's no requirement that you have to respond within 10 days. That does not exist in the act. Again, the section two ninth that, that council for the railroad was referring to does deals only with elections. If, if she meant to refer to section two six, that deals only with minor disputes. That's not this case. We're in a major dispute. This isn't, this isn't an application or, or interpretation of the existing agreement. This is changing the existing agreement. And, and there's a, I know we, we cite to it in our briefs, but there's also a really good explanation of major minor disputes in Conrail, the seminal 1989 Supreme court case of the differences between the two. Are there any further questions? Oh, thank you. Council. It's, it's a complicated case and argument has demonstrated its complexity and, but it's been a flexible group that argued and we'll take it under advisement. Thank you for your time.